.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBRA G. CARTER,                         Civil No. 6:11-CV-06224-AA
                                          OPINION AND ORDER

        Plaintiff,

        vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

Phil Brockett
Attorney At Law
P.O. Box 96
Bend, Oregon 97709
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97201

Daphne Banay
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
     Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff, Debra Carter, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner.   The Commissioner denied plaintiff's applications for Title II disability insurance benefits (DIB) and Title XVI supplemental security income (SSI) disability benefits under the Act.   For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On June 13, 2007, plaintiff filed applications for both DIB and SSI. Tr. 187-97. After the applications were denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). Tr. 96-97. On June 7, 2010, a hearing was held before ALJ James Yellowtail. Tr. 35. On June 18, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 20-28. On May 13, 2011, the Appeals Council declined to review the ALJ's decision. Plaintiff then filed a complaint in this Court. Tr. 1-3.

## STATEMENT OF THE FACTS

Born in 1958, plaintiff was 49 years old on the amended onset date of disability. Tr. 183, 214. Plaintiff graduated from high school and attended two years of college.  Tr. 235. Plaintiff has past relevant work experience as a waitress and as a sales clerk.  Tr. 26.  She alleges disability beginning April 18, 2008, due to chronic fatigue brought on by hepatitis C and

PAGE 2 - OPINION AND ORDER

joint inflamation presenting in her neck, back, knees, and hands.
Tr. 40, 230.  In addition, plaintiff alleges her obesity
exacerbates those conditions. Pl.'s Opening Br. at 4 [hereinafter
Pl.'s Br.].

A vocational expert (VE) testified at the hearing. In
response to exertional and non-exertional limitations offered by
the ALJ, the VE opined that there were jobs available in the
local economy that plaintiff could perform. Tr. 27, 63-70.
Therefore, the ALJ found plaintiff not disabled within the
meaning of the Act. Tr. 20-28.

## STANDARD OF REVIEW

This Court must affirm the Secretary's decision if it is
based on proper legal standards and the findings are supported by
substantial evidence in the record. Hammock v. Bowen, 879 F.2d
498, 501 (9th Cir. 1989). Substantial evidence is "more than a
mere scintilla. It means such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting
Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).
The court must weigh "both the evidence that supports and
detracts from the Secretary's conclusions." Martinez v. Heckler,
807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to
establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th
Cir. 1986). To meet this burden, plaintiff must demonstrate an
"inability to engage in any substantial gainful activity by

PAGE 3 - OPINION AND ORDER

reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."   42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled.   Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the

PAGE 4 - OPINION AND ORDER

Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 22, Finding 2. This finding is not in dispute. At step two, the ALJ found that plaintiff had the following severe impairments: cervical spine degenerative disc disease, right knee chondromallacia patellae, and hepatitis C. Tr. 22, Finding 3. This finding is not in dispute. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 23, Finding 4. This finding is in dispute.

The ALJ determined plaintiff had the residual functional capacity (RFC) to perform light work with some additional restrictions. Tr. 23, Finding 5. Plaintiff can stand, sit, and walk for six hours out of an eight hour work day; however, she must have a break every hour for one to five minutes to change positions. Id. Plaintiff can also occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps. Id. However, plaintiff was restricted from work that involved concentrated

PAGE 5 - OPINION AND ORDER

exposure to workplace hazards and extreme cold. Id. This finding
is in dispute.

At step four, the ALJ determined plaintiff was unable to
perform her past relevant work. Tr. 26, Finding 6. This finding
is not in dispute. Finally, at step five, the ALJ found that
there are jobs existing in significant numbers in the national
and local economy plaintiff could perform. Tr. 27, Finding 10.
This finding is in dispute.

Plaintiff challenges the ALJ's decision on three grounds.
First, plaintiff argues that the ALJ failed to consider the
effect of her obesity, alone or in combination with other
impairments, in her RFC. Second, plaintiff argues the ALJ failed
to provide specific reasons for discounting plaintiff's testimony
regarding her fatigue symptoms. Third, plaintiff argues the ALJ
improperly discounted the proffered lay witness statements by
failing to provide reasons germane to each particular witness.

I.  Plaintiff's Obesity

Plaintiff asserts that the ALJ erred by ignoring evidence of
her obesity and failing to consider it in steps two, three, four,
and five of the sequential disability evaluation. Pl.'s Br. at
20-22. She argues that the ALJ was required to consider the
effect of her obesity, particularly in combination with her other
impairments. Id. at 22.

Social Security Regulations provide:

    Effects of obesity. Obesity is a medically determinable
    impairment that is often associated with disturbance of the
    musculoskeletal system, and disturbance of this system can

PAGE 6 - OPINION AND ORDER

> be a major cause of disability in individuals with obesity.
> The combined effects of obesity with musculoskeletal
> impairments can be greater than the effects of each of the
> impairments considered separately. Therefore, when
> determining whether an individual with obesity has a
> listing-level impairment or combination of impairments, and
> when assessing a claim at other steps of the sequential
> evaluation process, including when assessing an individual's
> residual functional capacity, adjudicators must consider any
> additional and cumulative effects of obesity.

20 C.F.R. pt. 404, subpt. P, app'x 1, listing 1.00(Q). See also
SSR 02-1p, 2002 WL 34686281, at *4-5 ("[I]n the absence of
evidence to the contrary in the case record, we will accept a
diagnosis of obesity given by a treating source or by a
consultative examiner . . . . [W]e will do an individualized
assessment of the impact of obesity on an individual's
functioning when deciding whether the impairment is severe.").

Where there is evidence of obesity, the ALJ must determine
its effect upon the plaintiff's other impairments, ability to
work, and general health. See, e.g., Celaya v. Halter, 332 F.3d
1177, 1181-83 (9th Cir. 2003) (finding error where the ALJ failed
to consider the interactive effect of obesity where the plaintiff
implicitly raised it in her report of symptoms, it could
exacerbate her other conditions, and she appeared pro se at the
hearing); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)
(distinguishing Celaya and holding the ALJ had no duty to
consider the plaintiff's obesity at step two because there was no
indication in the record that it exacerbated her other
impairments).

The record reflects plaintiff's height is sixty-eight inches

PAGE 7 - OPINION AND ORDER

and her weight has gradually risen to 220 pounds. E.g. Tr. 325, 332, 337, 436, 498. Some of the medical notes in the record include observations that plaintiff is "overweight", Tr. 326, or "obese." Tr. 379, 462, 464, 498. However, only one doctor encouraged plaintiff to lose weight. Tr. 498. The record also reflects plaintiff suffers from impairments, specifically lower joint pain and fatigue, that could be exacerbated by her excess weight. See SSR 02-1p, 2002 WL 34686281, at *3.

Plaintiff's assignment of error is premised on the ALJ's alleged failure to consider the combined effect of her obesity with her other impairments.[1] Relying on Celaya, she argues that the ALJ's failure to explicitly discuss her obesity is tantamount to a complete disregard of the condition. She further argues the absence of any discussion of her obesity in the ALJ's opinion is dispositive and distinguishes Burch. Pl.'s Reply Br. at 3.

Plaintiff is correct, in that Burch excused the ALJ's failure to mention obesity only at step two. 400 F.3d at 482. However, this Court disagrees with plaintiff's assertion that the ALJ failed to sufficiently consider obesity when determining plaintiff's RFC. The ALJ's decision in Burch was upheld despite

---

[1] It is not clear from plaintiff's brief if she argues the ALJ's failure to consider her obesity a "severe impairment" at Step Two was an error independent of his alleged failure to consider her obesity entirely. See Pl.'s Br. at 20-21. However, "[o]missions at [S]tep [T]wo are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at [S]tep [T]wo." Harrison v. Astrue, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)). Therefore, it was not error for the ALJ to omit obesity from plaintiff's list of severe impairments because he otherwise adequately considered it. See infra pp. 9-10.

its cursory discussion of the plaintiff's obesity. Id. Indeed, the ALJ failed to explicitly tie the plaintiff's obesity to the limits given in the RFC. Id.

Here, although the ALJ's opinion does not explicitly mention obesity, there is sufficient indicia of his implicit consideration of the condition. E.g., Tr. 26 (ALJ's decision acknowledged "[w]eight loss was strongly encouraged" by a physician); Tr. 43 (At the hearing, the ALJ explained: "One of things that we're required to consider is the effect of weight . . . because excess weight can impact . . . lower joint disease."); see also Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (reviewing court can draw "specific and legitimate inferences from the ALJ's opinion"). I find sufficient evidence to conclude that the ALJ was aware of plaintiff's obesity and considered it appropriately.

However, even if the ALJ's failure to offer more explicit consideration was error, plaintiff has the burden to prove the harm stemming from that error. McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.").

Here, plaintiff has made no effort to draw this Court's attention to evidence which tends to show how the RFC determination was deficient because of the ALJ's failure to overtly consider plaintiff's obesity. See Burch, 400 F.3d at 684. Cf. Strauss v. Astrue, 6:08-CV-0931-AA, 2012 WL 1035715, at 810

PAGE 9 - OPINION AND ORDER

(D. Or. Mar. 23, 2012) ("Plaintiff does not detail what other physical limitations follow from his obesity . . . besides the limitations already listed in the RFC."). Instead, plaintiff simply concludes that her fatigue and degenerative disk disease are further aggravated by her obesity. Pl.'s Br. at 22. Finally, this Court finds nothing in the record indicating the RFC fails to account for limitations derived from plaintiff's obesity, standing alone or in concert with her other impairments. Indeed, the evidence in the record is similar to that in Burch. See 400 F.3d at 683 (not reversible error if evidence in record was "notes from doctors who observed weight gain, indicated that Burch is obese, and recommended [weight loss]").

Accordingly, I find no error in the ALJ's assessment of plaintiff's obesity.

## II. The ALJ's Credibility Finding

Plaintiff next argues that the ALJ failed to provide specific reasons for discounting her testimony about the severity of her fatigue. Pl.'s Br. at 22.

The ALJ must consider all symptoms and pain which "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. §§ 404.1529, 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir.

PAGE 10 - OPINION AND ORDER

2007) (internal quotation marks and citations omitted). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Moreover, the ALJ may not make a negative credibility finding because the claimant's alleged symptoms are inconsistent with his RFC assessment. See e.g., Carlson v. Astrue, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010); Young v. Astrue, No. 09-23-AC, 2010 WL 331781, at *5 (D. Or. Jan. 21, 2010). In this instance, however, the ALJ articulated a number of reasons supporting his adverse credibility finding. Specifically, the ALJ noted: (1) failure to follow prescribed treatments; (2) evidence of

PAGE 11 - OPINION AND ORDER

conservative treatment; (3) inconsistent statements; (4) an inconsistent reporting of symptoms; and (5) contradictory objective medical evidence. Tr. 25-26.[2] Because there is no affirmative evidence of malingering, the ALJ must offer "clear and convincing" evidence to support an adverse credibility finding; that standard has been met here.

i) Failure to Follow Prescribed Treatment

The ALJ determined plaintiff was not credible, in part, because she failed to follow the treatment advice of Dr. Divya Sharma, M.D., with regard to her hepatitis C. Tr. 25-26, 464, 501. Failure to follow a prescribed course of treatment is a legitimate factor an ALJ may consider when weighing a claimant's credibility. Tommasetti v. Astrue, 553 F.3d 1035, 1039-40 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284) (The ALJ may consider "unexplained or inadequately explained failure . . . to follow a prescribed course of treatment.") (internal quotations omitted); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). The record demonstrates that plaintiff was advised in January 2010 to avoid drinking alcohol because of her hepatitis C, a condition diagnosed more than ten years prior.[3] Tr. 464. Despite

___

[2] The Commissioner argues some of the evidence cited by plaintiff constitutes an introductory evidentiary summary rather than the ALJ's reasons for finding plaintiff not credible. Def.'s Br. at 9-10. As such, this Court construes the Commissioner's position as a concession that the evidence offered by the ALJ on pages 4-5 of the decision cannot form the basis for his later adverse credibility determination. Tr. 23-24.

[3] Plaintiff was similarly advised in 2007 to avoid alcohol. Tr. 326.

that advice, in April 2010 she reported to Dr. Sharma that she drank six to seven beers per week when she had the money to purchase them. Tr. 501. The record further supports the ALJ's interpretation of plaintiff's discussion with Dr. Sharma. Tr. 62 (At the June 2010 hearing, claimant testified, "if I had money, maybe I would drink a six pack a week."); Tr. 487 (claimant reported to Dr. Michael Henderson, D.O., she drank three beers, twice per week).

ii) Evidence of Conservative Treatment

The ALJ further noted plaintiff's testimony regarding the severity of her fatigue was not credible because the record demonstrated the inciting condition, hepatitis C, had been conservatively treated. Tr. 25. Conservative treatment is a factor in discounting testimony regarding the severity of symptoms. Parra v. Astrue, 481 F.3d 742, 750-751 (9th Cir. 2007); Phillips v. Astrue, CV-10-06367-AC, 2012 WL 1232005, at *4 (D. Or. Feb. 2, 2012) adopted, 03:10-CV-6367-AC, 2012 WL 1232419 (D. Or. Apr. 11, 2012) (conservative treatment was "a wrist splint for work and rest and Tylenol"). Cf. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received") (quotation omitted).

The record demonstrates plaintiff presented to Dr. Sharma in April 2010 complaining of fatigue that was attributed to plaintiff's hepatitis C. Tr. 25, 501. Dr. Sharma recommended the

PAGE 13 - OPINION AND ORDER

following: (1) the maintenance of adequate hydration; (2) daily walking; (3) avoiding alcohol; and (4) a liver biopsy. Tr. 501. Plaintiff declined the liver biopsy, citing a lack of money and insurance coverage.[4] Id. When questioned by the ALJ at the hearing about interferon treatments, plaintiff admitted they had never been recommended to her, although she speculated it was because "I can't really afford anything." Tr. 48-49. The ALJ is permitted to make an adverse credibility determination based on evidence of conservative treatment recommendations because it is inconsistent with a severe symptom or disease. See Meanel, 172 F.3d at 1114 ("[T]he ALJ properly considered Dr. Menos' failure to prescribe."). Although plaintiff alleges she could not actually afford the treatments, it is significant that the treatments were never recommended; rather, plaintiff was advised to stay well hydrated and walk daily. Id.; Tr. 25. Plaintiff's speculation as to the reason interferon treatment was never suggested may be reasonable, but that reasoning is unsupported by the record as a whole. Cf. Barrera v. Astrue, CIV 08-826-CL, 2009 WL 2731259, at *9 (D. Or. Aug. 28, 2009) (affirming adverse credibility determination where it was not clear from the record that conservative treatment was necessitated by a lack of financial resources). Dr. Sharma noted plaintiff's rejection of the liver biopsy as cost prohibitive, but neither Dr. Sharma nor

---

[4] As the Commissioner concedes, it is error for the ALJ to draw a negative credibility inference from plaintiff's inability to afford a liver biopsy. Def.'s Br. at 15-16 (citing SSR 96-7p, 1996 WL 374186, at *8). To the extent the ALJ did so, this Court finds error.

any other physician plaintiff approached made a similar notation regarding interferon treatment. Finally, as noted by the ALJ, a month later Dr. Sharma reported plaintiff "is not interested in perusing [hepatitis C] treatment options." Tr. 498. The ALJ sufficiently noted that substantial evidence demonstrating plaintiff's hepatitis C, the cause of her fatigue, was conservatively treated.

iii) Inconsistent Statements

The ALJ noted an inconsistent statement made by plaintiff.[5] Ordinary techniques of credibility evaluation, including prior inconsistent statements about the symptoms, "and other testimony by the claimant that appears less than candid" are appropriate for the ALJ to consider. Smolen, 80 F.3d at 1284. The ALJ noted plaintiff's conflicting testimony between a list of medication's submitted May 31, 2010, and her testimony at the June 7, 2010 hearing. Tr. 26. On May 31, 2010, plaintiff listed three pain medications she was taking: Meloxicam, Amitriptyline, and Naproxine. However, at the June 7, 2010 hearing, plaintiff testified she was only taking Meloxicam. Tr. 47. This evidence was appropriate for the ALJ to consider because it is evidence of plaintiff being less than candid. Smolen, 80 F.3d at 1284. I find no error.

iv) Inconsistent Reporting of Symptoms

___

[5] This Court notes there are further examples of inconsistent statements made by plaintiff. E.g., compare Tr. 247 (In June 2007, stated her disability now prevents her from being able to "hike, swim, camp.") with Tr. 482 (In March 2010, plaintiff stated her hobbies included camping and fishing.).

PAGE 15 - OPINION AND ORDER

The ALJ cited plaintiff's failure to mention her fatigue symptoms during three visits to the emergency room in 2009. Pl.'s Br. at 24. Evidence of a claimant's inconsistent or non-existent reporting of symptoms is competent evidence of the claimant's credibility and appropriate for an ALJ to consider. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

Here, plaintiff presented to an emergency room on three separate occasions, complaining of bronchitis (October 2, 2009), knee pain (December 13, 2009), and a broken tooth and ear pain (April 25, 2009). Tr. 430-31, 435-40, 452-55. During these visits there is no record of plaintiff discussing her ongoing fatigue.

Plaintiff argues it was error for the ALJ to rely on these three visits to the emergency room to find her fatigue testimony incredible because the nature of the visit made it reasonable and appropriate for her to only discuss the specific symptoms necessitating the visit. Pl.'s Reply Br. at 6. Although this is ostensibly correct, these emergency room visits are the only medical evidence in the record from April 25, 2009, until December 13, 2009. Tr. 436, 452. Once again, plaintiff argues this Court should find error where there is more than one reasonable interpretation of the evidence; something it cannot do. See Rollins, 261 F.3d at 857 (citing Fair, 885 F.2d at 604). Furthermore, the interpretation given by the ALJ is supported by the record. Tr. 25. Plaintiff reported her fatigue on November 11, 2007, and it was not mentioned again in her medical records until January 18, 2010, when she established care with Dr.

PAGE 16 - OPINION AND ORDER

Sharma, a twenty-six month gap. Tr. 379-80, 463-64. It was not error for the ALJ to consider plaintiff's failure to report fatigue symptoms when assessing her credibility. See Greger, 464 F.3d at 972; see also Flaten v. Sec'y of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ is entitled to draw inferences from "absence of references to a claimant's condition").[6]

v) Objective Medical Evidence

Finally, the ALJ relied on the opinions of Dr. Divya Sharma, M.D., and Dr. Michael Henderson, D.O., to find the plaintiff's complaints regarding the extent of her fatigue not credible. Tr. 25-26. Although the ALJ's credibility finding may not be based "solely upon" the medical record, it may serve as one factor among many in making an adverse credibility finding. Robbins, 466 F.3d at 883; Smolen, 80 F.3d at 1284. Here, the ALJ cited to evidence showing plaintiff's testimony regarding her fatigue symptoms was not supported by the objective medical evidence.

The ALJ noted Dr. Sharma, in responding to an inquiry from

---

[6] The gap in plaintiff's reporting of symptoms cannot be disregarded because of her lack of financial resources. The Ninth Circuit rejected a similar argument where there was evidence that the claimant alleged an inability to pay, but "she had received other medical care and failed to mention her [symptom]." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (citing Flaten, 44 F.3d at 1464). Here, the record demonstrates plaintiff went to the emergency room three times during the twenty-six month period and, additionally, sought medical assistance for knee pain on November 27, 2007. Tr. 401, 430-31, 435-40, 452-55. During these visits, plaintiff failed to mention fatigue, even when hepatitis C was listed in her medical history or she provided similar information. Id. at 401 (During a November 27, 2007 visit for knee pain, the doctor noted complaints of a "sleep disorder" and "acute sinusitis.").

PAGE 17 - OPINION AND ORDER

plaintiff's attorney regarding her symptoms (including
"[c]onstant fatigue and exhaustion"), said, "I cannot attribute
all of the above symptoms to hep[ititis] C." Tr. 513. The ALJ
also cited to a report by Dr. Henderson, who performed a
consultive exam on June 2, 2010. Tr. 487-88. Although Dr.
Henderson was aware of plaintiff's reported fatigue, Tr. 487, he
concluded, "[t]he main finding in her physical exam is decreased
rotational range of motion in her cervical spine." Tr. 488.
Furthermore, he noted "[t]here does seem to be some pain seeking
behavior." Id. Although this is not affirmative evidence of
malingering, particularly as it does not relate directly to
plaintiff's alleged levels of fatigue, it does bear on
plaintiff's general credibility. See Turner v. Comm'r of Soc.
Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting Smolen, 80
F.3d at 1284) ("the ALJ may consider 'ordinary techniques of
credibility evaluation'"). These opinions stand in stark contrast
to the claimant's own testimony, and her attorney's, that fatigue
is plaintiff's primary obstacle to gainful employment. E.g. Tr.
40, 46; Pl.'s Br. at 4.

The ALJ's reliance on the opinions of Drs. Sharma and
Henderson is reasonable. Although those opinions, standing alone,
may not serve to support an adverse credibility finding, they
indicate the medical record supports the ALJ's ultimate
credibility finding. See Robbins, 466 F3d at 883.

Based on the above, the ALJ articulated "clear and
convincing" reasons supported by substantial evidence and

considered appropriate factors when making his credibility determination. Although the ALJ erroneously relied on plaintiff's inability to afford a liver biopsy, this Court may still affirm an ALJ's overall credibility conclusion even when not all of the ALJ's reasons are upheld. See e.g., Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ's adverse credibility finding is affirmed.

III) Lay Witness Statements

Finally, plaintiff asserts that the ALJ erroneously rejected the lay testimony of her two friends and her mother. Pl.'s Br. at 25. The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3), 416.913(d), 416.945(a)(3); Lewis v. Apfel, 236 F .3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. Dodrill, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give reasons germane to each witness for rejecting his or her testimony. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

Here, the ALJ, in his decision, summarized the contents of the lay witness statements and then rejected them: "the claimant's and *third-party statements* concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." Tr. 24-25 (emphasis added).

PAGE 19 - OPINION AND ORDER

Plaintiff urges this Court to apply the same analysis it previously applied in Caldwell v. Astrue. 804 F. Supp. 2d 1098, 1104-05. (D. Or. 2011). In Caldwell, this Court reversed the decision of the ALJ because he "failed to separately address" the statements of two lay witnesses and he "failed to offer germane reasons specific to each witness for rejecting their third-party statements." Id. at 1105. Here, plaintiff argues, the ALJ made a similar error. Pl.'s Reply Br. at 8-9.

This Court, however, is bound by the Ninth Circuit's recent holding in Molina v. Astrue. 674 F.3d 1104, 1114-1122 (9th Cir. 2012). In Molina, the ALJ explicitly referenced third party statements, but "[did] not provide a reason for discounting the testimony." Id. at 1115. The Ninth Circuit panel held this was error because "lay witness testimony 'cannot be disregarded without comment.'" Id. (quoting Nguyen, 100 F.3d at 1467). However, the error was considered harmless because the lay witness statements "did not describe any limitations beyond those [plaintiff] herself described" and which the ALJ had adequately rejected. Id. at 1122.

The case before this Court is factually similar to Molina. Plaintiff is correct in that the ALJ likely failed to provide sufficient comment when rejecting the three lay witness statements. Id. at 1115. However, that error was harmless because: (1) the lay witness statements describe no limitations beyond those found in plaintiff's own testimony; and (2) as discussed above, the ALJ's adverse credibility finding is

PAGE 20 - OPINION AND ORDER

affirmed. Id.

The statement of Atocha Johnson describes two general categories of limitations observed since 2009. Tr. 311. First, Ms. Johnson describes plaintiff's physical limitations stemming from pain, including difficulty moving between sitting and standing positions, an inability to sit for longer than ten to fifteen minutes, and an inability to stand for longer than one hour. Id. Second, Ms. Johnson describes plaintiff's limitations stemming from plaintiff's fatigue, including a failure to follow through with plans due to exhaustion while plaintiff was working at a gas station. Id.

The statement of Stacy Benaburger describes two general categories of limitations observed from 2005 until August 2008. Tr. 315. First, Ms. Benaburger describes plaintiff's physical limitations stemming from leg problems, including a limp, "trouble standing for a long time," constant shifting or adjusting while sitting, and difficulty getting in and out of Ms. Benaburger's car. Id. Second, Ms. Benaburger describes plaintiff's trouble sleeping and her inability to respond to phone calls before noon. Id.

The statement of plaintiff's mother, Carol Carter, describes two general categories of limitations observed from 2008 until July 2009. Tr. 313. First, Ms. Carter describes plaintiff's physical limitations stemming from pain, including an inability to stand or sit "in one place for very long," a limp, and trouble going up and down stairs. Id. Second, Ms. Carter describes

PAGE 21 - OPINION AND ORDER

plaintiff's fatigue, particularly after driving for long periods.
Id.

The limitations described in the three lay witness
statements are similar to plaintiff's own testimony. Broadly,
each lay witness statement describes limitations brought on by
plaintiff's joint pain (e.g. trouble getting in and out of cars)
and limitations caused by plaintiff's fatigue (e.g. cancelling
plans). Plaintiff makes no argument that testimony regarding her
pain or the resulting limitations was improperly considered by
the ALJ, and this Court finds nothing in the record to the
contrary. Indeed, the ALJ appeared to include the lay witnesses's
pain limitations in the RFC. Tr. 23 (For example, plaintiff must
have "a break every hour for 1 to 5 minutes to change position").
Each lay witness statement also described plaintiff being
excessively fatigued after engaging in routine activity. Tr. 311,
313, 315. These limitations are coextensive, if less well
defined, with plaintiff's own reported symptoms. As discussed in
detail above, the ALJ properly rejected plaintiff's testimony,
finding the statements about the severity of her fatigue not
credible. Supra pp. 11-21. "Because the ALJ . . . validly
rejected all the limitations described by the lay witnesses in
discussing [plaintiff's] testimony, [this Court is] confident
that the ALJ's failure to give specific witness-by-witness
reasons for rejecting the lay testimony did not alter the
ultimate nondisability determination." Molina, 674 F.3d at 1122.

Accordingly, the ALJ's error in failing to individually

PAGE 22 - OPINION AND ORDER

consider each of the three lay witnesses statements is harmless. .

IV) Credit as True Doctrine

Finally, plaintiff urges this Court to apply the "credit as true" doctrine and order the case remanded. However, as discussed above, the ALJ sufficiently considered plaintiff's obesity and provided legally sufficient reasons for discounting plaintiff's testimony. Although the ALJ erred by failing to explicitly discuss each lay witness statement, that error was harmless. Thus, this Court declines to apply the doctrine.

CONCLUSION

Based on the foregoing, the ALJ's decision that plaintiff was not disabled and is not entitled to DIB or SSI was based on correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED, and this case is dismissed.

IT IS SO ORDERED.

Dated this 4th day of June 2012.


_Ann Aiken_
Ann Aiken
United States District Judge


PAGE 23 - OPINION AND ORDER